### AGNES M. FISCHER v. MIHELICH MONUMENT AND ANOTHER.

143 N. W. (2d) 838.

June 24, 1966—No. 39,886.

*Rainer L. Weis* and *DePaul Willette,* for relator.
*Shepley, Severson, Bey & Ochs* and *R. W. Severson,* for respondents.

OTIS, JUSTICE.

This appeal reviews a decision of the Industrial Commission affirming

a determination of a referee that an employee's preexisting occupational disease did not cause, accelerate, or contribute to his death.

The petitioner seeks benefits as the widow of an employee who, on July 24, 1962, was found by the Industrial Commission to have contracted silica tuberculosis of the left lung in September 1958. At the time of the employee's death on November 12, 1962, he was suffering from cancer of the right lung. The issue is whether there was evidence which compelled the commission to apportion benefits based on the extent to which the occupational disease contributed to the employee's death. Minn. St. 176.661 provides in part as follows:

"Where an occupational disease is aggravated by any other disease or infirmity, not itself compensable, or where disease or death from any other cause, not itself compensable, is aggravated, prolonged, accelerated, or contributed to by an occupational disease, the compensation payable is to be reduced and limited to such proportion only of the compensation that would be payable if the occupational disease were the sole cause of disease or death, as such occupational disease, as a causative factor, bears to all the causes of such disease or death."

It appears without dispute that sometime between April 23, 1962, and September 17, 1962, the employee contracted cancer of the right lung. His attending physician, Dr. Sumner S. Cohen, testified that because of his limited breathing capacity the employee could not tolerate an operation. With respect to the causes of death, Dr. Cohen stated:

"Q. And when the cancer set in, this did not mean that the silicosis or tuberculosis injury was of less significance?

"A. I don't think we can apportion the amount of significance of one thing. I would say that the heart failed after the cancer developed so that, again, I think the cancer, as far as the heart was concerned, was the straw that broke the camel's back.

\* \* \* \* \*

"Q. Doctor, based on reasonable medical certainty, do you have an opinion as to what brought on this physical situation which resulted in the demise of Mr. Fischer?

\* \* \* \* \*

"A.   That he first developed what is known as silicosis, that this became complicated by tuberculosis and that, during this period, he had some evidence of previous heart damage.

\* \* \* \* \*

"Yes, sir, the aortic valve area, possibly from a previous rheumatism, but this is surmise again and probably not significant, and that he went along with the silico-tuberculosis and was fortunate enough to control the tuberculosis so that it became inactive and reached a relatively stable condition so that he might have continued to live indefinitely. In approximately July of 1962, it became apparent that something new had been added which turned out to be cancer of the right lung, that the ordinary method—rather not ordinary but the usual method of curative treatment was not available to him because of his previous damaged lungs, due to silicosis and tuberculosis, and palliative treatment was the only form available to him and this was unsuccessful in retarding the growth of the cancer and it terminated in heart failure which was produced by first, the factor of original heart valve damage and secondly, the presence of silicosis and tuberculosis, which we do know causes some added heart strain and, on top of that was the cancer of the lung which totally caused the heart failure which then led to pulmonary emboli which was the immediate cause of death.

\* \* \* \* \*

"\* \* \* [S]ince we were not able to apply the best available treatment for the cancer, my surmise would be that if we would have been able to apply the best available treatment, that he might not have died when he did, although I don't want to be placed in the position of acting as God, to know just when any person is going to die."

Dr. Cohen concluded by stating that he could not apportion the loss of breathing capacity due to tuberculosis and the amount attributable to other causes, and that the precipitating factor in bringing about the employee's death by heart failure was the cancer.

On behalf of the employer, Dr. Moses Barron described the causes of death in the following manner:

"Well, the cause of death, he has several conditions that are sufficient

to explain it. One of them is that he had developed a severe myocardial weakness with the auricular flutter; that, in itself, may cause death, since unless it can change back to the sinus rhythm, and then we have a very extensive carcinoma and that, in itself, is sufficient to produce death, and the combination of the two probably played a part in this case.

\* \* \* \* \*

"\* \* \* [I]t is my opinion definitely that this shortened his life, that the carcinoma caused a tremendous detriment to effectiveness to circulation and his breathing and that it resulted in shortening the life."

An autopsy was performed by Dr. Leo Weiss, who testified on behalf of petitioner concerning the immediate cause of death as follows:

"Well, the major situation present in this individual was silico-tuberculosis, which I think by itself would have been fatal. I can't say when, where or how, and the cancer of the lung which he had which eventually also could be a fatal condition \* \* \*.

\* \* \* \* \*

"Well, actually, in many ways this is something that the pathologist cannot determine but, from post mortem examination, about all I could really do is to give a background and in the background there were two conditions, each of which would certainly by themselves have led to this individual's death in a relatively short time; which one would come first is sort of a matter of guess work but I do not think that he had silico-tuberculosis which was severe enough which would have caused his death by itself; the cancer was of severity that would have caused death by itself, and I would label the emboli infarcts as secondary findings which perhaps hastened his death a day or two, something like that.

\* \* \* \* \*

"Well, all I can do is to give the background, as I did, and there were very important things in the background and, if there had not been this background, this man probably would still be alive, if he didn't have silicosis, tuberculosis, if he didn't have a tumor, he'd be alive. The thrombosis, the uncommon findings of the thrombosis, they seem to be the thing that pushes the individual over but would not have occurred in a man who was not bedridden."

On cross-examination Dr. Weiss concluded, in response to a question as to whether cancer caused employee's death:

"Well, it certainly would have caused it eventually but, at that time, I have no way of knowing, but eventually certainly it would have caused death because it was beyond effective therapy.

"Q. And, likewise, on the basis of the amount of silicosis or conditions relating to tuberculosis that you found on the post mortem examination, is it, in your opinion, speculative as to whether or not those conditions would have caused his death?

"A. I think the silicosis-tuberculosis was adequate to cause death.

"Q. The time would be uncertain?

"A. This again is—this is very difficult. This man who had multiple things and I have enough trouble deciding what a man has and, only on examination, can I give a basic background, I can only give a basic background concerning this."

In the memorandum supporting his decision, the referee noted that it was speculative whether an operation in September 1962 would have cured or retarded the progress of the employee's condition. The referee concluded that the petitioner had not established by a greater weight of the evidence the relation between the preexisting occupational disease and the employee's death. In view of the medical testimony, we are of the opinion that the referee was compelled to reach this decision. There was no evidence from which the commission could find the extent to which the occupational disease was a proximate cause of the employee's death, nor is there any testimony which would support a mathematical apportionment. None of the doctors would attempt to predict whether the employee would have survived had he not been afflicted with an occupational disease. It is apparent that either the cancer or silica tuberculosis was sufficient to hasten the employee's death. But, in the absence of medical testimony estimating the extent to which the occupational disease shortened the employee's life, it was clearly the duty of the commission to deny recovery. The order of the commission is therefore affirmed.

Affirmed.